Caldwell, J.
Edward N. Roth, Charles G. Roth and Joseph Roth were brothers, Theckla Roth, their mother. The father of these ■children died some years ago, leaving his estate to his wife first, with a provision over to his children. That provision was such that the children at all times, after the death of the father,had an estate in the property that they could dispose of.
Charles G. Roth became the proprietor of an hotel in this city, the St. Clair House. He rented it from the Penn Mutual Life Insurance Company, and he furnished it. Then he had, aside from what he had in the hotel, property in lands that he got from his father’s estate, and he ■evidently ran behind in his hotel business, so that on the 18th day of February, he was undoubtedly insolvent, unable on that day to pay his debts. It is not made clear to us by the evidence whether he first transferred his interest in the property that he got from his father’s estate to his brother Edward N. on that day, or whether he transferred the property in the St. Clair Hotel to C. D. Robertson. Which transaction took place first we are not made aware. However, on the same day he did transfer all his interest in the property he had received from his *482 father to his brother Edward N., and on the same day fa& transferred all his property in the St. Clair Hotel to C. D. Robertson, agent or trustee. These are really two separate cases in their facts and in the law.
I take first the case of his transfer to his brother Edward N. of the property he received from his father’s estate. It seemed that Edward N. had endorsed paper for him to some considerable extent. His mother Theckla Roth had loaned him money, and held his obligations, and had endorsed for him to a considerable extent, and then he owed his brother Joseph also. Now, these parties met on that day, and Edward N. agreed to assume and pay all this indebtedness if he would transfer to him his interest in that property that was inherited from the father, and the only question involved in the case is this: it is claimed that the mother never surrendered nor gave up the paper that she held against her son Charles G., but that she was his real debtor all the while, and that Edward N. had simply taken this property and agreed that when he made the money out of it, or out of the property coming from the father, that he would then pay her the amount due, and it was claimed that the same-arrangement largely took place in regard to Joseph; that although Joseph surrendered his paper, that he agreed to receive his pay when his brother Edward N. made it out of the father’s estate; but the theory, on behalf of the creditors,is to make it appear now that Edward N.stands in this light: that he took this property in payment of all that his brother Charles owed him personally; that he took it and held it for the payment of his mother, and that his mother was all the while a creditor, continued to be the creditor of Charles, and that Edward’s obligation to his brother Joseph was nothing more than to pay him out of the estate when the property was settled, which virtually amou.nts to paying him out of the property that was assigned to him, so that would leave as to this property, if that i& *483 true, Edward N. standing as having received this property for the payment of his own debt, for the payment of. the debt of his mother, and for the payment of the debt of his. brother, and Charles bhing insolvent at the time it would make him a trustee, and it would come under 6343 of the statutes, and would make him a general trustee for allcred-. itors.
Pogue & Pogue (Province M. Pogue of Counsel),and N. JT, Cash, for Plaintiff.
Maxwell & Ramsey (Lawrence Maxwell of Counsel), for E. N. Roth.
Now that is a good theory in this case, but it is purely ai theory. A fair weight of this testimony can have possibly no such construction. The fair construction of this testimony is this: that Edward N. on that day • said to his brother Charles “You transfer to me this property, and I will here assume and agree to pay your debts”, which was the purchase of that property, and the purchase price was that he would pay his own debt, that he would assume and! pay the debts that Charles owed to his mother and to his. brother Joseph. This being true, the testimony places it. entirely in the light of a purchase of property for a good and valid consideration, and the mother and the brother Joseph could at any time compel Edward N. to pay this debt, any time that these debts were due and unpaid. That being true, he does not stand at all in the light of a trustee, but in the light of a purchaser, and hence the general creditors can have no resort to this property. They have no interest in it, and their claim in regard to this property is denied by this court.
(SAME CASE.)
An assignment by an insolvent debtor of property to a creditor for ' himself and in trust for another creditor, amounts to an assignment in trust for all the creditors of the insolvent, under sec. 6033, R. S.
*484 Now, as to the other branch of the case, Charles Roth got in arrears with his rent of the St. Clair Hotel to the Penn Mutual Company. The Penn Mutual Company was pressing him very hard for payment, and i't became entirely evident to the Penn Company, or those who were trying to collect the claim for the Penn Company, that it was impossible to get money from him at that particular time. The only¡thing the agent could do would be to get security, and it is pretty hard for us to understand why a collecting agent may not take security for a claim when he can not get the money on it, providing he does not extend the time of payment in any way, or in any way change the obligation. However, it is said that the collecting agent was doubtful as to his authority to take security. Charles offered, or it was arranged so that Charles was willing to give as security for the payment of that debt — over $2800 then due, on which the mother was liable for a thousand dollars as surety — to transfer by a bill of sale to C. D. Robertson, his property in the St. Clair Hotel. Now, it is said to us that the agent was very doubtful as to his authority to take that security. If that was turned over as payment, there was no extension of time, except as it might be inferred in • the fact of taking something that would have to be reduced to money,and thus devolving time; but it is said the agent was doubtful of his authority, or felt very doubtful about it, and was willing to take the property, but it must be subject to the approval of the Penn Company, and it was concluded to do something in regard to taking the property, but leave it in a tentative form, not making it complete, but leaving it in such a form, that whether it was valid or invalid, whether it was effectual or ineffectual, was to be determined by the approval of the Penn Company. A regular bill of sale was made of this property. It was made to C. D. Robertson as for himself and trustee for the Penn Mutual Company.
*485 pIt seems there were a number of guests in the hotel, ■some of whom were sick, and Roth made that fact known,' that it would be impossible for him to proceed, if he gave ■up all he had there, and to take proper care of the persons who were sick in the house. Thereupon C. D. Robertson .gave to Roth fifty dollars of his own money, no doubt intending that the Penn Company would make him good on that fifty dollars, and took the assignment for the security of that fifty dollars for himself instead of for the debt Roth owed to the Penn Company. This bill of sale was placed on file. Perhaps the closest question on the evidence •is, as to whether Mr. Robertson took possession of the property. The evidence is somewhat conflicting upon that. There is no doubt but that the evidence agrees upon one point — there was something said and done between the parties in regard to taking possession, and Mr. Goodhue, who represented Mr. Roth in this proceeding,said, or as he says', was requested by Mr. Robertson, inasmuch as he was boarding at that house, to look after the matter in behalf of Robertson, and keep possession of the property. Mr. Robertson don’t place it near as strong as that, but after examining all this testimony we are satisfied that the proceedings went beyond the tentative state. We are satisfied that Mr. Robertson got such a possession there, by what was said ■and done, that he would have been in a very good position ■to have fought any creditor who had made an attachment ■upon that property, as that he was not only the owner by bill of sale, but was in possession of it, and in fact as •against creditors who might attach or levy upon the property, if he had no possession, he would be in no better position than he was before he took his bill of sale as against them. We are inclined to .believe from this testimony, and •so hold, that he did have, at least modified possession of that property, and a possession that would enable him, as against Roth at least, to claim as the owner and in posses *486 sion of the property, and probably could have done so ao against creditors.,
Now, this being true, everything was done there that could be done, to make a complete transfer of this property , to Mr. Robertson. I am not now speaking of what was to take place afterwards upon the election of the Penn Company; They might come on and repudiate the whole of it or confirm all that had been done. The matter rested that way for a few days, when the Penn Company came on and repudiated all that Mr. Robertson had done in their behalf, and Mr. Robertson stopped right where he was, and the-Penn Company went to Roth, and got the property transferred to il, and some additional property, I think transferred to it, as security- for its claim, either by bill of sale or mortgage. I presume by bill of sale, and has been the owner and holder of the property under that transaction ever since, of at least has pretended to be such.
Now, on behalf of the creditors, the claim is made here-that Mr. Robertson became the owner of that property, the assignee of that property from Roth for the payment of his own claim, and for the payment of the Penn Mutual Life-Company, and under the well established rule of law in this state, if that is his situation, then he became the assignee by virtue of those fact, for all the creditors of Roth, as to that property, and the property was vested in him then as assignee, for the benefit of all the creditors of Charles Roth. Having found already that the matter went beyond the mere tentative state, and that nothing was done-thereafter except for the Penn Company lo come on and make a different contract, and repudiate what Robertson had' done. It might repudiate so far as it was concerned, but as to other creditors, the Penn Company could not repudiate. If the property had vested in Robertson as the trustee of the creditors generally of Roth, then it was beyond the power of Robertson to transfer the property in any manner *487 so as to relieve himself from the obligation that vested upon him as such assignee.
Pogue & Pogue (Province M. Pogue of Counsel) and D. F. Cash, for Plaintiff.
Robertson & Buohwalter (W. F. Buohwalter of Counsel), and Robert Pugh,for O. D. Robertson.
This being true, if we are right in the facts we find this evidence: we think that Mr. Robertson, if he turned this property over to the Penn Company or any other person, Ho difference who, upon the Penn Company paying him> fifty dollars, it seems he allowed the Penn Company to take-possession of this property and get a title to it from Roth, and if Roth had already transferred it in such a way that it could not be thus surrendered, why then the Penn Mm tual Company got no title to this property, and the title of' it is still vested in Robertson as assignee.
This brings us to the conclusion that the creditors have a right to look to Mi. Robertson in this matter, and require him to account for the property that was turned over to him* at the time he received that bill of sale, and the decree may. be made accordingly.